FLICKWIR & BUSH, Inc., v. WALKONEN.

(Circuit Court of Appeals, Third Circuit. December 20, 1916.)

No. 2152.

1. TRIAL ⚷⟶178—DISMISSAL OR NONSUIT.

On the test whether a case is for the jury, testimony for plaintiff must be accepted as true.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 401–403; Dec. Dig. ⚷⟶178.]

2. MASTER AND SERVANT ⚷⟶287(8)—INJURY TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.

Evidence in a servant's action for injury from the giving way of a brace on which he stepped, as to his having done so at direction of the carpenter boss to whose orders it was his duty to conform, as to it being unsupported, and this patent on inspection, and as to duty of the boss to see that it was supported, held to make a case for the jury, within Employers' Liability Act Pa. June 10, 1907 (P. L. 523), abolishing defense of fellow servant, where an employé's injury is caused by negligence of a person to whose orders he was bound to conform.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1064; Dec. Dig. ⚷⟶287(8).]

In Error to the District Court of the United States for the District of New Jersey; John Rellstab, Judge.

Action by Lauri Wilhelm Walkonen against Flickwir & Bush, incorporated. Judgment for plaintiff, and defendant brings error. Affirmed.

Vroom, Dickinson & Bodine, of Trenton, N. J. (Joseph L. Bodine, of Trenton, N. J., and William G. Wright, of Philadelphia, Pa., of counsel), for plaintiff in error.

J. Alfred Anderson, of Boston, Mass., W. Holt Apgar, of Trenton, N. J., and William A. Pew, of Salem, Mass., for defendant in error.

Before BUFFINGTON and McPHERSON, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below Walkonen, a citizen of Russia, brought suit against Flickwir & Bush, Incorporated, a corporate citizen of New Jersey, to recover for personal injuries alleged to have resulted from the latter's negligence. The cause was tried, and resulted in a verdict for the plaintiff. On the entry of judgment thereon defendant sued out this writ.

In the final analysis the 44 assignments of error finally resolve them-

---

⚷⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

selves into the correctness of the refusal of the court to give binding instructions for defendant. The injury to the plaintiff was suffered in Pennsylvania, and the case was based on the Employers' Liability Act of 1907 of that state (P. L. 523), set forth in the margin.[1] A study of the proofs satisfies us that the case was one for a jury. Without reciting all of them, it suffices to say they tended to show defendant company had contracted to build the piers of a railroad viaduct. These piers were of concrete, which was poured into an opening between frames or molds. These wooden frames, built by carpenters as the work progressed, consisted of sections of outer and inner squares, about 17 feet high, spaced about 4 feet apart. Into such opening soft concrete was poured, which hardened and formed the pier. The outer frame section was movable, and when a 17-foot section of concrete work was finished, the outer frame was raised in sections by crane chains and used to form the next highest section, in conjunction with an inner square which was built up from below to correspond. The weight of the soft concrete as it was poured in tended to spread the forms outwardly where it pressed against them, and to come together higher up. The two forms were kept together by tie rods and kept apart by wooden braces. These braces were about six inches wide and two thick, and in addition to serving as braces they were also used by the workmen to stand on while handling the concrete. They were made stable and secure, either by resting on the tie rods or on cleats nailed to the forms.

It was the duty of Oudine, the boss carpenter, to see that these braces were secure. At the time of the accident Walkonen, who was a carpenter, was helping build the inner wooden frame of a pier which had been built up to a height of about 240 feet. He was working under Oudine's direction, laying a platform on beams which reached across the top of the inner square. On this platform concrete was placed preparatory to its being shoveled into the space between the forms. The carpenter work was being hurried, because the concrete men could not get to work until it was done. Walkonen was bracing the beams when Oudine told him—

[1] "Section 1. Be it enacted, etc., that in all actions brought to recover from an employer for injury suffered by his employé, the negligence of a fellow servant of the employé shall not be a defense, where the injury was caused or contributed to by any of the following causes, namely—

"Any defect in the works, plant, or machinery, of which the employer could have had knowledge by the exercise of ordinary care; the neglect of any person engaged as superintendent, manager, foreman, or any other person, in charge or control of the works, plant, or machinery; the negligence of any person in charge of or directing the particular work in which the employé was engaged at the time of the injury or death; the negligence of any person to whose orders the employé was bound to conform, and did conform, and, by reason of his having conformed thereto, the injury or death resulted: the act of any fellow servant, done in obedience to the rules, instructions, or orders given by the employer, or any other person who has authority to direct the doing of said act.

"Section 2. The manager, superintendent, foreman, or other person in charge or control of the works, or any part of the works, shall, under this act, be held as the agent of the employer, in all suits for damages for death or injury suffered by employés."

"to brace those beams quickly; that it was in a hurry, because there were so many men out of work. * * * When Oudine saw that I was bracing the beam, and he saw that it was loose, he told me to get down and step on that brace between the inner and the outer form. * * * I was lying on my stomach on this beam here. * * * Oudine called to me that 'you had better get down and hammer that brace on from the other side; to get down onto the brace between the inner and outer form, because you might fall from there and get hurt.' "

## What follows Walkonen thus describes:

"Q. Now, what did you do on receiving that order from Oudine? A. I stepped down on the brace. Q. And which brace did you step on? A. The third brace. Q. That would be the one right opposite where you were trying to nail the bracing between the two beams? A. Yes. Q. And was that the nearest brace to where you were working? A. Yes. Q. Now, go ahead from there and tell us? A. When Oudine told me to get down on that brace, I was going down. I had one foot on the brace already, and I was just about to put the other foot on, when it gave way and I fell down. Q. How far did you fall? A. 16 feet. Q. Did the brace go with you? A. Yes. Q. And what did you land on? A. On the reinforcement rod. Q. And what did that do to you? A. Went in through my leg. Q. And how much was that reinforcement rod sticking up above the concrete? A. About three or four feet. Q. Now, before you stepped on that brace that you used, did you know it was unsupported either by a turnbuckle or a cleat? A. No; I didn't. Q. After you went down in between there, after the accident happened, did you see whether there was a cleat or turnbuckle supporting that brace that came down? A. When I fell down, I looked up, and I saw that there was neither a turnbuckle or a cleat there. Q. From where you were standing before the accident, looking down, could you tell whether there was a turnbuckle or a cleat under that brace? A. No; I couldn't see. Q. Could Oudine, standing out on the end where you say he stood—could he tell, by looking over the side, whether there was a turnbuckle under that brace? A. Yes."

[1] There was proof tending to show that the brace had been there for some time, and that it was neither supported by a tie rod nor a cleat. There was contradictory testimony on the part of the defendant, but on the test whether the case is for a jury we must accept the testimony in behalf of the plaintiff as true.

[2] Without, therefore, entering into further details, it sufficiently appears that the proofs tended to show that Walkonen was an employé of the defendant; that his duty was to conform to the orders of Oudine, the carpenter boss; that he was ordered by Oudine to stand on a certain brace in doing a certain piece of work; that he conformed to such orders, and by reason of said brace being unsupported by a cleat or tie rod it gave way and caused plaintiff's injury; that the injury was caused by Oudine's negligence, whose duty it was to see the brace was secured; and that the proof that the brace was not supported at all, a lack which was patent on inspection, all united to bring the case within the Pennsylvania statute quoted, and afforded grounds from which a jury could infer negligence on the part of the defendant.

The judgment below will therefore be affirmed.